**Edwin Marious BERTSCH, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 36395.**

Court of Criminal Appeals of Texas.

Jan. 15, 1964.

Rehearing Denied March 18, 1964.

Second Motion for Rehearing Denied May 13, 1964.

**658**

Paul Huser, Schulenburg, Werner J. Stavinoha, Weimar, Bob Looney (on appeal only), Houston, Tom Higgins (on appeal only), Austin, for appellant.

Wallace T. Barber, Dist. Atty., San Marcos, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is murder; the punishment, death.

The deceased was the 18 year old daughter of the appellant. She was shot at fairly close range with a 12 gauge shotgun. The high powered birdshot load penetrated her body from front to back, the point of entry being slightly to the left of the right breast and the exit wound being under the left shoulder blade.

The appellant's confession to Sheriff T. J. Flournoy, introduced in evidence without objection, omitting the warning portion, reads:

"Sunday October 7th, 1962, was my parents' 50th wedding Anniversary, and all of the relatives were invited to a celebration, however my wife and my mother do not get along very well and my wife did not get an invitation to the celebration. My daughter Rose Marie, who worked in Houston, had come home Saturday evening to visit us and to attend the celebration. My wife and children went to church Sunday morning, but I did not go, I stayed at home and slept. When they came home someone brought a large basket of food from the celebration and my wife and children *eat* dinner, but I did not eat anything. About two o'clock in the afternoon my wife and I were arg-*uri*ng about the invitation and Rose Marie ran up and slapped me, and my wife and children left and went to Plum and got some water and brought it back to the house and Rose Marie started ironing some of her clothes. I had been lying on my bed in my room which is just across a narrow hall from Rose Marie's room. I got up and got my 12 *gage* pump shotgun partly opened the door to my room and the door to Rose Marie's room was standing wide open and Rose Marie was standing up before her dresser and I rested my gun against the door facing and shot her. I then tried to pump another shell in my gun, but it jammed and I could not get another shell in it. I then walked out on the front porch and set down and was still setting there when the officers came and arrested me.

"The above statement has been read over to me and by me and is true and correct to the best of my knowledge.

/s/ Edwin Marious Bertsch."

Deputy Sheriff Prilop testified that he arrived at the appellant's home, where the shooting occurred, shortly after 6 P.M. He found the appellant sitting on the front porch with a 12 gauge pump shotgun nearby. Appellant's wife and 6 year old daughter were in the yard screaming and crying but the appellant was calm.

The shotgun had an empty shell jammed in the barrel and there were two live shells in the magazine. The shells in the magazine were loaded with Double O buckshot. The marks on the fired shell in the barrel showed

it to be a newer and heavier loaded shell than those in the magazine, and that it was loaded with 7½ shot.

The appellant testified and called his wife as a witness. The only other eye witness was their six year old daughter, who was present at the trial but was not called to testify.

The appellant testified that he picked up the gun after he decided to clean it and started out the door of his room carrying the gun across his left arm as he opened the door with his right hand; that he did not know the gun was loaded; that "the shot went off and then somebody hollered, when they hollered I was off. I didn't know nothing. I fell and don't remember nothing since * * *"; that the next thing he remembered, Mr. Prilop was shaking him.

Appellant's only explanation of his confession to Sheriff Flournoy was on cross-examination when he testified that he did not remember what he told him. "I was so sick when I was giving that statement, I don't remember what I said." He also testified on cross-examination that many of the statements in the confession were untrue.

Mrs. Bertsch testified that she was in the room with her daughter when she heard "a big bang" and saw her daughter falling and bleeding; that the appellant was standing with a gun in his hand; that she asked him "Did you do this?" and he did not answer, "he was just standing there dumbfounded, wouldn't answer anything, and standing there and holding that gun like he was holding it and trying to work it or something."

It would serve no useful purpose to set out other evidence offered by the defense to support the defense of accident. Suffice it to say that the jury resolved the issue against the appellant and the evidence is sufficient to sustain the jury's verdict finding that the appellant with malice aforethought voluntarily shot and killed his teenage daughter and assessing the supreme penalty.

Appellant's brief presents as his first ground for reversal remarks of the district attorney in his closing argument to the jury which it is contended constituted unsworn testimony which injected new and harmful facts into the case. His second ground also relates to argument of the district attorney which it is contended was a comment upon the failure of an incompetent witness to testify.

Both of these complaints to argument are presented by formal bills of exception which the court refused to approve, noting thereon his reasons. Also a transcript of the argument of the district attorney appears in the statement of facts.

The bills of exception relating to argument show no reversible error for several reasons:

(1) In the first place, the record shows without dispute that no objections of any kind were made to any remark or argument of the district attorney. Doswell v. State, 158 Tex.Cr.R. 447, 256 S.W.2d 416, and cases cited.

(2) There was no acceptance of the court's reasons for refusing to approve the bills of exception as required by Art. 760d Vernon's Ann.C.C.P. Cook v. State, Tex. Cr.App., 356 S.W.2d 149; Campos v. State, 172 Tex.Cr.R. 179, 356 S.W.2d 317.

(3) The complained of remarks were not of such prejudicial nature that an instruction from the court could not remove the harmful effect thereof. No objection was made and no request for instruction to disregard the remarks.

(4) The six year old eye witness is not shown to have been an incompetent witness.

The remaining ground upon which reversal is sought is based upon the statement of Juror Garbade, during the deliberations of the jury, in the presence and hearing of Juror Schroeder: "I was close to the Sellers case and when he was sentenced he said 'I am glad I did it.' This kind of thing has got to be stopped."

The statement of facts on the motion for new trial does not appear to have been filed separately, as required by statute. Art. 759a, Sec. 6, Vernon's Ann.C.C.P.

Being a death penalty case, we have carefully examined the record from which it appears that the quoted statement of the Juror Garbade referred to a murder case tried several months previously in the same court, wherein one Sellers pleaded guilty to the murder of his daughter and received life or a 99 year sentence. It was shown to be an "offhand remark" which the only juror who heard it said he did not pay much attention to, he having already firmly decided that the only proper punishment in this case would be death.

Assuming that the matter is properly before us, the juror's remark does not warrant reversal. Lera v. State, 144 Tex.Cr.R. 619, 165 S.W.2d 92; Wilson v. State, Tex.Cr. App., 352 S.W.2d 114; Turner v. State, Tex.Cr.App., 331 S.W.2d 319; Tellez v. State, 162 Tex.Cr.R. 456, 286 S.W.2d 154.

The judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

DICE, Commissioner.

In his motion for rehearing, appellant urges for the first time, as a ground for reversal of the conviction, that a part of the proceedings at the hearing of his motion for new trial was in his absence. Appellant alleges in his motion, which he supports by the affidavits of his two trial attorneys, that upon the hearing of the motion for new trial a typewritten transcript of the district attorney's jury argument was introduced in evidence, with the agreement that it be later corrected by the parties after they had heard an electronic transcription of the argument made at the trial. Appellant alleges that after the court had overruled his motion for new trial and he (appellant) had been removed from the courtroom and taken to jail, the state's prosecuting attorney and his attorneys did listen to the electronic transcription of the district attorney's argument and at such time made numerous deletions, additions, and insertions in and to the typewritten copy of the argument previously introduced in evidence.

Appellant insists that such action in his absence was in violation of his right to be confronted with the witness against him, as guaranteed by Art. 1, Sec. 10, of the Constitution of Texas, Vernon's Ann.St., and was a denial of due process guaranteed to him under the Fifth and Fourteenth Amendments to the Constitution of the United States and Art. 1, Sec. 19, of the Constitution of this State.

■ While this court is not authorized to consider affidavits attached to motions for rehearing, setting up matters not shown by the record, in view of the penalty assessed we have examined them and the questions presented and fail to perceive any reversible error.

■ The mere correction of appellant's exhibit in his absence, after the motion for new trial had been overruled, was not "evidence" being introduced from the witness stand. The proceeding was not such a part of appellant's trial as to require his presence, under the provisions of Art. 580, Vernon's Ann.C.C.P.

■ Error is now urged for the first time to the admission in evidence of state's exhibit # 7, which appellant alleges was an inflammatory photograph of the bloody body of the deceased. The exhibit does not appear in the record and it is charged by appellant that the same has been secreted and suppressed by the district attorney and sheriff of Fayette County, thereby depriving him of its use on appeal. An examination of the record reflects that state's exhibit # 7 was admitted in evidence after Sheriff Flournoy testified that it "truly represented that which it purported to show." Appellant's only objection to the exhibit was his statement: "the man who took the picture is not here."

The admission of the photograph in evidence was not error.

■ On the question of the alleged suppression of the photograph by the district attorney and the sheriff, certain affidavits are presented in the record by both appellant and the state. The affidavits of appellant's trial counsel state, in substance, that the photograph (Ex. 7) introduced in evidence was in possession of the sheriff and that when they went to him he informed them that he did not have the photograph and did not know where it was.

Sheriff Flournoy, in his affidavit, states that he had made a diligent search of the files in his office and was unable to find the photograph. District Attorney Barber, in his affidavit, states that he did not keep possession of the photograph after the trial and that a thorough search of his office did not reveal the exhibit.

Under the record presented, we are unable to agree with appellant's contention that said exhibit was shown to have been secreted by the district attorney or sheriff.

■ Appellant further alleges in his motion for rehearing that during the trial the district attorney suppressed evidence of appellant's insanity and that Deputy Sheriff Adamcik, who refuses to make an affidavit, if called on as a witness will testify that he had appellant under arrest within an hour after the commission of the crime and, in his opinion, appellant was completely out of his mind and insane, and that the prosecution knew of this condition.

The affidavit of Deputy Sheriff Adamcik is presented by the state, in which he swears:

"* * * I have never thought that Edwin Marious Bertsch was insane at any time. * * *"

District Attorney Barber also presents his affidavit, in which he states:

"At no time, either prior to, during, or subsequent to the trial of the said

Edwin Marious Bertsch did the Sheriff, or any Deputy Sheriff, of Fayette County, Texas, or any other credible person, in any way tell me or even indirectly intimate to me that in their opinion the Defendant, Edwin Marious Bertsch, was insane at the time of the commission of the offense for which he was tried, or that he was in any way insane or unable to assist his counsel in his defense at the time of trial of the said case."

We overrule the contention that evidence was suppressed.

Other contentions urged by the appellant have been carefully considered and are overruled.

The motion for rehearing is overruled

Opinion approved by the court.